Ejimerson, J.
This case depends entirely on the construction of the Act of 1797, ch. 43, § 4, which has so long been a subject of legal controversy in this State. The great importance of the question, the serious consequences which seem to he apprehended from the decision of it in one way, as well as the respect due to the talents of those by whom the conflicting opinions are advocated, have induced me, notwithstanding the time which has heretofore been consumed in the discussion of the question, to consent to the very elaborate investigation which has occupied so much time at the present term. I have given to the very able arguments of the counsel for the plaintiffs in error, all that attention to which they were so well entitled. I have heard them, not only with the pleasure which a man anxiously solicitous of avoiding error cannot fail to receive from an able and masterly investigation o.f the subject on which he is called to decide, hut I can truly say, without the slightest perceptible bias in favor of impressions previously entertained.
Before entering into an investigation of the arguments urged in support of the opposite constructions of the Act which have been contended for at the bar, it is proper to inquire whether the question has already been so *188 settled by prior adjudications as to supersede the necessity of further investigation. On the part of the plaintiffs in error it has been insisted that from the passage of the Act of 1797 until the year 1815 no trace of a judicial decision opposed to their construction of the Act is to be found; that the decision in the cases of Lillard and Elliot and Weatherhead and Douglass v. Bledsoe’s heirs, are to be considered as departures from the settled law on the subject, and have been since overruled by the case of Darby’s Lessee v. Mc’Carroll and others. On the part of the defendants in error it is alleged that, until the year 1808, the construction of the Act for which they contend was universally received, that it was supported by decisions which have not been reported; that the opinions to be found in the reported cases, decided in the courts of this State, are to be considered only as the dicta of the judges, delivered in causes in which the question was not necessary to be decided, and that no decision, where the point came directly before the Court, has ever been made in opposition to the construction for which they contend.
When a decision has been made by the highest judicial tribunal of the country it is entitled to great respect, and ought not to be departed from but for weighty reasons and on a clear conviction that it is erroneous ; but if generally acquiesced in by society, the conduct of men regulated by it, and rights acquired under it to a considerable extent, it ought to be viewed as conclusive evidence of the law. But a recent decision, made by a Court divided in opinion on the subject, the propriety of which has always been controverted, will not justify a subsequent Court in surrendering their judgment to its authority.
As to the point now under consideration, it is believed that so far from being settled by prior adjudications of a character precluding further investigation, it is most eminently entitled to the appellation of vexata ques-tio. This will clearly appear from a review of the state of legal opinion respecting it from the passage of the Act to the present time. As to the precise state of opinion prior to the year 1808,1 cannot speak with certainty; no antecedent decisions on the subject are reported, and the counsel widely disagree, each side contending for unanimity in their favor. The truth probably is, that a diversity of opinion existed ; certain it is that the necessity of a connection of some kind between the deed of a possessor and a grant to enable him to avail himself of the Act, was advocated by a respectable portion of the profession. We have the authority of Judge Roane for asserting that from the time of the passage of the Act he had always entertained this opinion. He was one of the judges of the late Superior Court when the Act passed, and continued in that situation until the year 1801, and during this period it is believed he was by no means singular in the opinion entertained by him. It may, I think, be safely assumed that prior to the year 1808, no decision took place opposing the idea that a con *189 nection was required, and that this idea was then entertained by a respectable portion of the profession. This is abundantly evinced by the case of Hampton v. McGinnis, the first reported case we have on the subject; the Court, consisting of three judges, expressly decline giving any decisive opinion. Not a word is said by either the Court or counsel, authorizing the belief that the question was understood to have been settled by prior adjudications. Neither in the case of Sawyer’s Lessee v. Shannon, nor in that of Patton’s Lessee v. Hynes, the last of which was decided in 1813, is there to be found the slightest intimation that the question had been settled. Nay, as late as the case of Weatherhead and Douglass v. Bledsoe’s heirs in-1815, the question was evidently considered by the Court as then unsettled. From that time to the present the decisions have been variant, the judges divided in opinion, and no one opinion generally aquiesced in by the profession. In this state of things I am compelled to view the question as still open, and after giving a respectful attention to the arguments and authority of those who have preceded me, it will he my duty to decide this cause in such a way, as, according to my judgment, will give effect to the intent and meaning of the Legislature, in the Act under consideration. Should I err, the injurious consequences, if any, which may result, will be regretted, but it will be some consolation to reflect that I have erred in common with men of distinguished talents ; a still greater will arise from the consciousness of having, to the best of -my ability, discharged my duty.
Many rules have been adopted by the courts relative to the construction of statutes; they are all designed to aid us in ascertaining the intent and meaning of the Legislature ; this once discovered, it becomes the duty of courts to give effect to it unless prohibited by the Constitution. To the Legislature it belongs to make laws, on the courts devolves the duty of expounding them. It has been justly observed by a learned judge of the Supreme Court of the United States that, “by the rules which are laid down in England for the construction of statutes, and the latitude which has been indulged in their application, the British judges have assumed a legislative power, and on the pretence of judicial exposition, have, in fact, made a great portion of the statute law of the kingdom.”
In order to ascertain the meaning of the Legislature, we are first to resort to the words of the statute; if these be plain, clear, and ambiguous no room is left for construction ; we are bound to consider them as having intended what they have thus clearly expressed.
On the part of the plaintiffs in error, it is contended that the expression “ deed of conveyance founded on a grant ” is ambiguous, that it does not necessarily import a connection between the deed and grant, but may fairly be interpreted to mean a deed of conveyance for granted land. That this interpretation is proved to be the correct one, by considering that the Act was passed to remove the doubts then existing as to the true construction *190 of the Act of 1715, ch. 27 ; that no reason can be assigned why the Legislature should have required a connection, that to have done so would have been absurd and calculated to defeat their object, which was the protection of their possession, and productive of infinite mischief and confusion.
So far as relates to the question, whether any connection whatever is required by the words of the Act of 1797, it does seem to me that language could not well be more clear and explicit, for how a deed can be founded on a grant with which it is wholly unconnected, is to me inconceivable. It is said that whatever title cannot be supported without producing a certain grant is founded on that grant. Suppose a grant to A for a tract of land, and a deed of conveyance from B to C for the same land, could not the title of C be supported without producing the grant to A? would it not'be much better supported by the production of a grant to B? And would the grant to A afford it any support whatever, unless we take for granted the point in dispute, that the Act in question requires no connection between the deed and grant? Again, suppose a grant to B to be produced, and the inquiry made whether the deed from him to C was founded on that grant, or on the one to A, or equally on both, could there be any hesitation in saying that it was founded on the grant to B and on that alone?
Let us now inquire whether the reasons urged in support of the construction contended for by the plaintiffs in error will justify it.
It is said that the Act of 1797 is merely explanatory of the Act of 1715, and was intended only to remove the existing doubts as*to the true construction of the latter Act; that the only doubt which existed on this part of the subject was, whether by the Act of 1715 possession alone would bar, or whether to have that effect it must be accompanied by color of title, an expression, the meaning of which, though not then accurately defined and understood, it is said, was never considered by any lawyer or judge, either in North Carolina or Tennessee, as requiring a regular connection between the deed and grant.
It is true the doubts which originated in North Carolina about the years 1794 and 1795, and which afterwards extended to this State, caused the passage of the Act of 1797. But I cannot believe that it was the intention of the Legislature, by that Act, simply to adopt the construction of those who advocated the necessity of color of title. They designed to remedy the evil arising from the existing uncertainty, not only by declaring that possession to create a bar must be accompanied by some evidence of title, but by describing what that evidence should be, and they have said that it must be a grant or deed of conveyance founded on a grant. But how did the Legislature know that color of title was not understood by its advocates as requiring a connection ? It cannot be denied that the expressions used about that time relative to the color of title were well calculated to induce a belief that such connection was considered necessary. *191 In 1 Hay. 319 we find this language used : “ The Act of Limitations had two objects in view; the one and principal object was to fix upon a mode of settling disputes between different claimants of the same land under different grants or titles.” Again, it is said that “ a possessor, to be protected by the statute, must take possession of granted land with a belief that the land is his own, as under a patent or deed under some patentee.” Although it is certain that by the decisions in .North Carolina a connection between the deed and grant was not required to constitute color of title, yet expressions similar to the foregoing, which abound in the North Carolina reports about that period, and were probably in use here, might well have induced a belief in the Legislature of 1797 that it was considered necessary.
But were there not reasons founded on the existing state of things in Tennessee, which might have operated in inducing the Legislature to confine the protection of the statute to claimants under grants, or deeds connected with grants ?
The Act of Limitations, so far as it respects real estate, is principally founded on political considerations. The Legislature did not consider that the claim of a trespasser became more just or equitable by a continuation of the trespass for seven years, but a variety of considerations induced them to believe that the public interest would be promoted by requiring the real owner to assert his claim within seven years, under the penalty of being bound as against possessors of certain descriptions. Of what description these possessors should be would depend entirely on the situation of the country and of the titles to land within it at the time of passing the Act. Whether a simple possession, or one accompanied by an' appearance of title, should be required, and whether this appearance of title should be more or less complete, are questions which the same Legislature would, under different circumstances, decide very differently. The difficulties to be encountered, and the obstacles to be surmounted by claimants in asserting their rights, and the facility with which possessors might avoid an interference with them, are circumstances which would very properly be taken into consideration, and would probably have great weight. That these were reasons arising out of the peculiar state of things existing in Tennessee in 1797, which might have influenced the Legislature in confining the protection of the Statute of Limitations to those who had some evidence of title, and for requiring that such evidence should be apparently complete, cannot, I think, be doubted. Whether they were sufficient to justify such a measure on the score of expediency, it was for them to decide. Both titles to, and possessions of, land were then of recent origin; a great portion of the State had been granted and was yet a wilderness. A large quantity of land was owned by non-resident proprietors, who had received it either in compensation for personal services in the Revolutionary War or for supplies of money or property furnished for the *192 prosecution of that war. Their settlement on the lands thus acquired was probably neither wished nor expected by the State at the time they were granted. The procurement of tenants, or the employment of agents who could be relied on to remove intruders, was extremely difficult if not impracticable, but at an expense exceeding the then value of the land. The mode of conveyance prescribed by the Act of 1715 was universally understood. The registration of deeds was required by law, and a compliance with this requisition was scarcely less necessary to the securing and quieting titles than the Act of Limitations itself. Owing to the state of the countiy, and the conduct of surveyors, it was in many instances difficult and in not a few wholly impracticable, for grantees speedily to ascertain the boundaries of their lands, and without this their claims could not be legally effected. .This, together with the existence of two or more apparent titles for the same land, constituted the principal embarrassment then existing relative to land titles. Emigrants were settling on the unoccupied lands with a view to the future acquisition of title, not by the operation of the Statute of Limitations, but by purchase from the owners, to facilitate which, some were purchasing, for little or nothing, pretended titles, in the validity of which they reposed no confidence; money and personal property was scarce; land was abundant, and a principal article of traffic relied on for procuring more active capital; its value, except with those who purchased with a view to immediate settlement, would be effected in proportion to the danger of losing it by the operation of the Statute of Limitations. There was an abundance of land for sale, for which apparent titles existed, to supply the demand of settlers. This state of things was not permanent, but the precise period when it would cease could not be foréseen. The Legislature well knew that whenever a change in the circumstances of the country should, in their judgment, render it expedient, they possessed the power of modifying the provisions of the Act they were then passing, so as to adapt them to the different and probably permanent state of things which might arise.
Under such circumstances, is it absurd to suppose that the Legislature should say to the occupiers of land, We are disposed to afford you all the security in our power to confer, without unnecessary harshness, if not injustice, towards the real owners of the land ; great and unusual impediments to the assertion of their claims exist at present; it is easy for you to ascertain whether there be an apparently good title to the land on which you settle; if so, it can be perpetuated by registration, which the public interest requires should be done ? Do this, and if, after you have been in possession seven years a better title shall appear, you shall, notwithstanding, be protected; but under existing circumstances we do not think it essential to the public interest, nor are we disposed to protect your possessions against the claim of those who have fairly, honestly, and per *193 haps meritoriously acquired a legal title to the land, unless upon the production of such evidence as will warrant the belief that, after reasonable caution and diligence, you took possession under a belief that your title authorized you to do so. This evidence, we now inform you, is a grant or deed of conveyance founded on a grant. Is it so absurd to suppose the Legislature to have designed to use such language, as to authorize us to depart from the obvious meaning of the expressions used by them ? I cannot think so.
But it is asked: why require a connection between the deed and grant of a possessor ? the title will be as defective with as without the connection. It is manifest that when requiring evidence of title, in order to make possession a bar to the real owner, the Legislature mean only apparent title. The elder grant, when brought in conflict with a junior one, does not require the aid of the statute; and the junior grant conveys no title, because at the time of its issuance the State had nothing to grant. But it is admitted on all hands that color of title by deed or grant is required by the Act of 1797, and some assert it was required by the Act of 1715, cli. 27, § 3. For the reasons assigned in the case of Weatherhead and Douglass v. Bledsoe’s heirs,“..and the additional ones offered in the arguments of this cause, I am cleárly of opinion, that by the 3d and 4th sections of the latter Act, no written evidence'of title was required; an adverse possession was alone sufficient to create a bar. But why is a deed or grant required either by the Act of 1797 or by those who advocate the necessity of color of title ? To show, it is said, that the possessor took possession with a reasonable belief that the land was his own. And surely it will not be denied that such belief is much more clearly evinced by a connected chain of title than by a deed which may have been executed by a person known to the bargainee to have had no pretence of title whatever, or who, at least, was unable to produce any evidence tending to show that he had one.
Again, it is said that, by requiring a connection between the deed and grant, the title will become more insecure in proportion to the length of possession. It will be recollected that at the time of the passage of the Act of 1797 there were few, if any, possessions of longer duration than the period required by the acts of limitation in many other countries ; evidences of title were required to be registered by which they were generally perpetuated ; if lost or destroyed some evidence of their existence would be adduced and after a long possession their existence would be presumed. Besides, the great source of uncertainty and inquietude respecting land titles at that time was the existence of two or more apparent titles to the same land, and it is not unreasonable to believe that the attention of the Legislature was mainly directed to the providing a remedy in guch cases, in doing which they would have omitted a provision for others, having *194 strong, if not equal claims to protection. Such an omission, however, it is not for us to remedy. It is impossible to prescribe any rule in relation to limitation which will embrace all cases meriting protection and none others. Every general rule which can be devised will frequently prove hard, and sometimes unjust in its operation; but we can neither include cases omitted nor exclude those embraced by the Act.
Again, it is said that the construction which requires a connection between the deed and grant will leave scarcely a case on which the act can operate, and will amount almost to a repeal of the Act of Limitations; to this it may be replied, that the operation of the Act will be as extensive as it is believed the Legislature designed, and far more extensive than the objection supposes. The object of the Act evidently was to protect possessors, who, after ascertaining that there was a grant for the land, had taken care to acquire a right to the possession of it, in the event the grant conferred a title to it, and that title bad not been previously transferred to another. To have required them to ascertain that there was no elder grant, and that no prior conveyance of or contract for the land bad been made, would have been to require an impossibility, and would have rendered the Act wholly inoperative; because in such an event the title would not have required the aid of any statute of Limitations. But to require of a possessor to see that the person from whom he was acquiring title had an apparent right, either by grant, deed, devise, descent, or by such contract as, prima facie, would enable him to compel a conveyance, would impose no such arduous task; it required nothing more than the exhibition of that evidence of title, of which the vendor must be presumed to be in possession, and which, in the then situation of the country, a vendee desirous of avoiding an interference with the rights of others ought to have required.
It is admitted by the argument of the counsel for the plaintiffs in error, that, of the two constructions of the Act of 1715 contended for at the time of the passage of the Act of 1797, the Legislature .adopted the one most restrictive of its operation, and it is by no means certain that this construction was not understood by them as requiring a connection between the deed of a possessor and a grant. As, therefore, the Legislature have most unequivocally manifested a disposition rather to restrain than to extend the operation of the Act of 1715,1 cannot believe it incorrect to extend the restriction as far as the obvious meaning of their language requires. But I am not disposed to go further than is unavoidable, without doing violence to the expressions used by them, and therefore I am of opinion that any title, either legal or equitable, which, if unopposed by another, would show that the possessor either had or was entitled to the interest in the land, provided it were vested by the grant in the grantee, will enable such possessor to avail himself of the statute; in every such case the possession *195 must have been held either by the grantee or by some bargainor, heir, or devisee, showing an apparent title under him, or by some «person holding the possession by the consent and permission of such grantee, bargainor, heir, or devisee, — in any of which cases, and in no others, as I conceive, can it be said with propriety that the possession was held by virtue of a grant or deed of conveyance founded on a grant.
The Act of 1819, ch. 28, can have no operation on this case, but it has been relied on as expressive of the sense of the Legislature as to the true construction of the Act of 1797. I consider it rather as an expression of the opinion of the Legislature as to what the law ought to have been than as to what it really was. Notwithstanding the provisions contained in that Act, it is very possible that a majority of the Legislature might not have been willing to declare it as their opinion that the Act of 1797 contemplated only a deed of conveyance for granted land. It is worthy of remark, also, that notwithstanding two decisions in the Supreme Court of this State in the year 1815, sanctioning the opinion that a connection between the deed and grant was necessary, and a decision of the Supreme Court of the United States in February, 1816, to the same effect, it was not until the fall of 1819 that the Legislature thought proper to act upon the subject; may not the omission be ascribed to their acquiescence in the correctness of the construction which is supported by those decisions ? In this case, as no connection, either legal or equitable, between the grant to A. Bledsoe, the ancestor of the defendants in error, and Bowman, under whom the plaintiffs in error claim, is shown on this record; the deeds from the execution having been made without authority, I am of opinion that the judgment ought to be affirmed.
Whyte, J.
This cause presents a case upon the Statute of Limitations, and principally upon the Act of 1797, Act 43, § 4, whether, by the true construction of that Act a connected chain of title is required. To this point the argument of the counsel on both sides has been directed. Both sides claim its decision according to their own way, with a denial of a decision in favor of their opponents, and reported cases are introduced to support their respective positions and pretensions. In addition to this, it is stated by very respectable members of the bar, that from the time of the passage of the Act of 1797 until the year 1808, from their information and understanding, the idea of a connection of title was not entertained or agitated in the courts of Tennessee; while, on the other side, members equally respectable state it as their understanding and impression that, during the same period, an opinion quite the reverse was .entertained; and that, from the year 1797 to 1808, a regular connected chain of title from a grant must always be shown by a defendant to make the statute available for his defence. By those who insist that a connected chain of title is not necessary, it is contended that, whether any decision has been made or not, *196 the question is not settled. The decision, as it may, has not been acquiesced in by the bar; the question has always been agitated in every case when the Statute of Limitations has been made a part of the defence, and therefore it is now insisted that this Court give an opinion upon the Act of 1797, and declare their own construction thereof; whilst, on the other side, it is insisted that the point is closed by former decisions, and not now open for examination. They admit the decision has been contested, but deny that it impairs its binding force, or renders it of less obligation on this Court, as a precedent of the law.
Such being the outline of the argument of the bar, I shall first examine if, from the reported cases of the decisions in this Court, there is a decision on the question, whether a connected chain of title is necessary by the Act of 1797, Act 43, § 4; and secondly, in pursuance of their views, I will give my opinion on that Act, and my construction of it with reference to this question; and thirdly, make its application to the cause before the Court on this record.
On the first point, whether from the reported cases there is a decision on the question, whether a connected chain of title is necessary by the Act of 1797. To prove that there is a decision, and that that decision is that a connected chain of title is not necessary under the Act of 1797, the counsel for the plaintiff in error read and relied upon the case of Hampton and Mc’Ginnis, decided in the year 1808, and reported in 1 Tenn. Rep. 286, under his possession, protected by the following title, to wit: that case was this : Mc’Ginnis, the defendant, claimed by deed from Mc’Namee to himself ; a deed from Inman to Mc’Namee; a deed from Ritchie, the patentee, to Inman, dated 6th November, 1788; and a grant from the State to Ritchie, 18th November, 1788. There was a verdict for the defendant under the charge of the Court, and a motion for a new trial. Campbell, judge, in his charge to the jury, was inclined to think with the plaintiffs’ counsel; on the new trial, said the equity of the case was with the defendant, and he was inclined to think the statute did apply. Powell, judge, gave no opinion. Overton, judge, went lengthily and learnedly.into the case, and this case and his opinion is considered by the plaintiff in error’s counsel as advancing and deciding that a connected chain of title is not necessary to be shown by the defendant to be protected by the statute of 1797. Admitting this to be a very respectable opinion, yet it is no decision on the question of the necessity of a connected chain of title; for unless an opinion is called for by the facts of the case, and rendered necessary in deciding the cause, it need not be given, and of course is extra-judicial. It is, under such circumstances, only what is called a dictum,, and however respectable, is not an authority as a precedent of the law. In this case of Mc’Ginnis there was a connected chain. There was no broken link, as is mentioned in the reasoning of the opinion, for there was a regular title deduced down to Me’Ginnis, the *197 defendant and tenant in possession, the grant not being issued to Ritchie, the grantee, at the time of his conveyance to Inman, but twelve days after-wards, constituted no chasm or broken link; for the seisin of the “state” in the land granted, upon its issuing, instantly passed to the bargainee of his grantee, and operated in the same manner as if the grantee’s conveyance had been made instantly after the issuing the grant, instead of twelve days before ; see 4 Wheaton, 222 ; and so it has been decided in this Court at Knoxville, in the case of-, and at Sparta, in the case of Dixon’s lessee against Ring. I cannot consider this case as showing more than the opinion of a very respectable judge, but not called for by the case.
The next case introduced on the same side to prove that point is Napier’s Lessee v. Simpson; 1 Tenn. Rep. 449 ; there the defendant, Simpson, claimed under a grant, but younger than the plaintiff’s grant; or, what is the same thing, under the old grant and younger entry, which is overreached by the older entry and younger grant of the plaintiff. The defendant’s claim was immediate to him from the grantee, by deed dated 15th August, 1799. He was in possession from the March before, or March, 1799. The suit was brought the 6th April, 1806, and it was objected by the plaintiff that the Statute of Limitations could not avail him, because, although he had seven years’ possession, yet it was not by virtue of his deed. For his possession from March, 1797, to August, 1799, was not by virtue of his deed. But the Court held that his possession before his deed was the possession of his bargainor, and it could not be otherwise; so there was a possession of seven years protected by the statute. Now the facts of this case do not furnish an instance of a chasm in the title, of a broken chain, of a link defective or wanting. The chain is regular, composed of two links. The conveyance from the State, consisting of the entry and grant, taken together to Cochran, the grantee, and the deed from him to the defendant. His conveyance from the State being the junior one, rendered his title defective, and needed the benefit of the statute, which it obtained, but not by having a broken link or chasm.
The next case cited by the counsel for the plaintiffs in error is the case of Sawyer’s Lessee v. Shannon and Boling, in the year 1809. 1 Tenn. Rep. 465. That was a decision in the Circuit Court of the United States. The question of a connected chain was argued at great length in this case, upon the motion for a new trial, a verdict having been found for the plaintiff; Todd, judge, said, “Let a new trial be granted to avoid delay. There are several other points open to further investigation on the trial, if the parties choose.” Mc’Nairy, judge, said it was clear to him, from the wording of the Act of 1715, that irregular and defective conveyances were sufficient with seven years’ possession, which existed in this case, and he felt satisfied the statute applied. The construction of the Act of 1715 he believed to be correct. Todd, judge, “As to the construction of the Act of *198 1797, be had great doubts at first, which were not entirely removed. The opinion of those who knew the cause of making the statute, and the doubts intended to bo removed, certainly deserve consideration in doubtful cases. The case, however, will stand over for a new trial.” A note by the reporter says, “At a subsequent term a verdict was had by the defendant”; but we are not informed on what ground. It might have been obtained, probably was, on the better or older title of the defendant than of the plaintiff, for the counsel of the defendant, in the argument for the new trial, said they were entitled to hold without the aid of the Statute of Limitations ; and the facts of the case are not all stated, so as to enable us to see how it was. This decision, as far as I understand it, proves nothing on this question. The question whether a regular chain must be produced, does not appear to have been necessarily made in the case, for the plaintiff’s title might have been the youngest; and if the question was necessarily before the Court, it only shows that Judge Todd entertained doubts at first, which were not removed. And Judge Mc’Nairy’s construction of 1715 is given, but he does not even mention 1797.
The next and last case cited by the counsel for the plaintiff in error is Patton’s Lessee v. Hynes, in the year 1813, in the Circuit Court of the United States, reported in Cook’s Reports, 356. This case, by its facts, brought the question fairly before the Court whether a connected chain was necessary or not for the defendant to avail himself of his possession, under the Act of 1797. And that Court, consisting of Judge Todd alone, held that there need not be such a regular chain of conveyances to authorize the statute to be a bar.
It is to be observed, that of the four cases introduced by the counsel of the plaintiff in error, the last is the only one that, by its facts, is clearly and unequivocally applicable to the point, and where the question is directly decided, that a connected chain of title from the grant to himself is not necessary to be shown by the defendant, to render his possession of seven years available under the Statute of Limitations. It is also to be observed that the decisions pf the Circuit Court of the United
States, although they are admitted to be very respectable, are not authority, nor do they constitute, precedents of the law for this Court. They are, however, entitled to weight, as highly respectable opinions upon the points properly before them and embraced by them. Upon the present occasion it must be further remarked, that the weight of the decisions mentioned in the eases in the Circuit Court of the United States is taken away by a direct decision of their revising court, to wit: the Supreme Court of the United States, upon the same point, in the case of Patton’s Lessee v. Easton, on the same property and the same facts. When noticing two cases that have been decided in the Supreme Court of Tennessee, as settling the construction of the Act of 1797, they say: —
*199 “ It has been decided that a possession of seven years is a bar only when held under a grant or a deed founded on a grant. The deed must be connected with the grant. This Court concurs in that opinion. A deed cannot be founded on a grant, which gives a title not derived in law or equity from that grant; and the words ‘ founded on a grant,’ are too important to be disregarded.”
Otj the other side of the question, the counsel of the defendants in error, in order to prove that a connected chain of title was necessary, commencing with the grant and continuing down to the defendant, the tenant in possession, to render his possession available under the Statute of Limitations, read and relied upon, first, the case of Lillard and Others v. Elliot’s and Others’ Lessee, August term, 1815, in this Court at Nashville (printed in pamphlet) ; the facts were these: a grant issued in 1790, to one John Elliot, for the land in question; another John Elliot moved from the State of North Carolina, and died in this State before the date of the grant; the heirs of this last John Elliot got possession of the grant, and conveyed, in 1793, to one Motherall, who in 1803 took possession of the land, which has been held by him and others claiming under him to the commencement of the suit. The defendants are in under Motherall, and have seven gears’ possession without suit; the plaintilf’s lessors are the heirs of John Elliot, to whom the grant issued. The chasm or deficient link in the defendant’s title is the want of a conveyance from the grantee. The defendant claimed the benefit of the statute, and the facts of necessity require the decision, whether a connected chain of title was necessary to entitle him to it. The Court, consisting of two judges at that time, Overton and Cooke, differed in opinion; the latter being of opinion that, under the Act of 1797, a deed cannot be founded on a grant which will not support it for want of a regular chain of conveyances, or that will force it in equity.
The former was of a different opinion. The case was decided and judgment rendered according to Judge Cooke’s opinion, by the Act of 1811, ch. 72, § 16, which says that in all cases in the Supreme Court, when there may be a writ of error to reverse the judgment of the Circuit Court, and the judges differ in opinion, the judgment of the Circuit Court shall be affirmed.
The next case cited and relied upon by the counsel for the defendant in error was Weatherhead and Douglass v. Lessee of Bledsoe’s Heirs, in this Court, also at Carthage, finally decided December term, 1815, and reported in 2 Tennessee Keports, 352, and also in pamphlet. The facts of the case were these: a grant for 6,000 acres of land issued to Anthony Bledsoe in 1787, and the lessors of the appellee and his heirs-at-law. Some time afterwards a judgment was recovered against one Bowman by Douglass, one of the appellants; an execution under this judgment was levied on 640 acres of the land included in the grant to Bledsoe, which at the sheriff’s *200 sale was purchased by Douglass; he sold it to Lyon, who took possession of the 640 acres, and in 1800 conveyed it to Weatherhead, who at the same time received possession, and continued it to 1811, when the suit was brought. These facts present also a proper case for this question ; there is a chasm between Douglass and the grant. It does not appear that Bowman was the grantee or a claimant under the grantee, or that he had any title whatever-. This cause was decided after this Court consisted of three judges, a third having been added by act of Assembly since the decision of the case of Dillard v. Elliot. Judges Overton and Cooke maintained their former opinions ; Judge Roane, in his opinion filed in the office, says: “ In the present case Weatherhead has been more than seven years in possession, by virtue of a deed of conveyance from Lyon, and a deed from Douglass ; Douglass procured a judgment against one Bowman; the Sheriff sold the land in dispute; Douglass became the purchaser, and procured the Sheriff's deed; or, in other words, the defendant has a deed of conveyance founded on another, and that on a third, but here he stops. Is it a deed of conveyance founded on a grant in the words or meaning of the Act ? It cannot be so. It is simply a naked deed of conveyance; for let the words founded on a grant be explained or tortured as they may, still they must at last mean that some connection of some kind does exist between the deed and the grant. It does not appear that Bowman had a grant or any interest in one, or that he had or claimed any interest or right to the land; that he was in possession of it, or that he ever saw it, or knew anything about it.”
“ Under these circumstances, can it be said or pretended that the defendant was in possession by virtue of a grant or deed of conveyance founded on a grant ? It is presumed not.”
“ The Circuit Judge, therefore, was certainly correct in his charge to the jury, that such a possession in the defendant did not create a bar.”
These two cases establish the position that for a defendant in ejectment to avail himself of the Statute of Limitations, he must have a seven years’ peaceable possession under a title, or protected by a title, from a grant down to himself, by a connection of some kind, at least, between all its different parts.
The first case, that of Lillard and Elliott, was decided by the concurrence of one of the judges of this Court, at the time it consisted of two members, with the judge below, and on that account, perhaps, may be thought not entitled to as much weight as if it had been determined by two judges of this Court, constituting a majority. Be this as it may, it must be taken as a decision of the case, and of the point on which it turned. The property or matter in controversy was passed and determined by it, and the tribunal was a regularly constituted one under the laws of the country, such a one as the Legislature thought proper to establish and *201 deem sufficient in such cases to settle men’s rights, and to make precedents of the law ; I am, therefore, as it seems to me, forbidden to view it otherwise than as a decision. The next case is not liable to the same objection; it was decided by two judges, members of this Court, being a majority against the opinion of the third judge. This is also a precedent of the law. What the operation of these two decisions in point ought to have on the present Court, on a similar question, is a matter that has been touched upon by the counsel in the argument, as before stated.
On this my opinion is, that when decisions have existed for some length of time, and have become a rule of property, there they ought not to be disturbed, although objectionable at the time they were made, because it would unsettle men’s estates, and be the product of confusion and mischief. But where decisions are recent, and from the circumstances attending them they have not become the rule of property, and they are clearly objectionable, — in such case, I think, we ought to exercise our own judgment, especially if the objections to them are strong. As regards the present case, and the application of the two cases of Lillard and Elliot, and Weather-head and Douglass to it, I would say that if the ■construction of the Statute of Limitations established by them was clearly wrong or liable to great objections, I should deem it my duty not to be bound by them in point of authority, as settling the law on the question; but on the other hand, if doubtful only, they ought not to be overturned.
I, for my part, concur with the principles of these two cases, as being the result of right reason on the principles before them. In this view they derive weight as right reason, and consideration, from the opinion of the Supreme Court of the United States, not as having or being authority in this Court, which is by no means admitted, unless in particular cases, under the. Constitution of the United States, and the acts of Congress, concurring with them in its own judgments, independent of the consideration of their being State decisions. Chief-Justice Marshall says, 1 Wheat. 428: “The deed must be connected with the grant; this Court concurs in that opinion; a deed cannot be founded on a grant, which gives a title not derived in law or equity, from that grant, and the words ‘ founded on a grant ’ are too important to be discarded.”
I come now to the second point proposed, to give my opinion as it vras requested upon the Act of 1797, and my construction of it with reference to the grant; and here I must premise that in the very lengthy discussion of this case, upon the different constructions that have been given of this Act at the bar, so many reasons have been ably advanced in support of each construction, upon either side, according to the views of the statute respectively entertained by them individually, that it cannot be expected, though well deserving thereof, that they can be all noticed in- an opinion ; I shall, therefore, confine myself principally to my own view of the statute, *202 and that also without adverting to the arguments and reasons assigned on either side, in the judicial opinions that have goue before me, which are much more ably handled and better expressed than I can pretend to, and which may be turned to in the different reports, and therefore here unnecessary.
The Act of 1797, ch. 43, § 4, says that “in all cases where any person or persons shall have had seven years’ peaceable possession of any land, by virtue of a grant or deed of conveyance founded upon a grant, &c.” These words, to my mind, naturally and necessarily bring forward the idea of a title ; grant from the State, which is here meant, forms a title of itself, and excludes naked possession, or possession covered and accompanied by a verbal claim, because, by the diction, the seven years’ peaceable possession must have been by virtue of a grant. This is one member of the sentence, forming a complete idea of title by itself, in all cases within its application ; but if the Act had stopped here, its operation would have been incomplete as to the subject-matter requiring its interposition, insomuch as it would have extended to only one class of cases, to wit: to possession held by virtue of a grant, and been exclusive of all those which were one or more removes from the grant. This second class of possessions were to be provided for; it is done by the second member of the sentence, or deed of conveyance, founded upon a grant; this advances the idea of title with equal force to exist .in all cases within the scope of its application. But it has been argued that the Legislature, by the above diction, only intended as qualifications of the possession, to be protected by the statute, that the land so possessed should have been granted by the State, and the possession fair and honest as between him and the State. But if the extinguishment of the State’s title, by the fair means of a grant and the protection of its interests from the usurpations of individuals, was the only thing contemplated by them in this Act, why did they not use language to this effect, and not language necessarily conveying a different meaning? In such case they might have said, “ seven years’ peaceable possession of granted land.” And if it was their intention to protect possessions independent of the right and title of the possessor, only annexing as a qualification of the possession that it should be fair and honest, as between him and his bar-gainor, why was not this, their intention to do so, simply expressed, as by seven years’ peaceable possession, by virtue of a deed of conveyance of granted land?
Is this construction a reasonable one ? I would observe, in the first place, that there is something in the manner of the expression, in the form of the clause, in the arrangement of its words, as well as in their known use and acceptation, that enters into the development of the written idea and imposes a character upon its meaning. Now, when I read in this Act the clause, “in all cases where any person has had seven years’ ¡teaceable pos *203 session of any land, by virtue of a grant or deed of conveyance founded on a grant,” title is irresistibly presented to my mind as its character; and I might say that here it is a prominent one too. I do not mean to say that this first blush of a case is conclusive; very far from it, for we must examine and see whether this character is illusory or not, whether it is supported, for if not supported by the words and spirit of the Act, it is of no avail; but if so supported, then it is auxiliary, and strengthens, inasmuch as it proves a construction, natural, easy, and plain, not forced or strained, and of course not misconceived. These, with other reasons which I shall mention presently, leave no doubt resting on my mind that title was meant by the Legislature in their passage, as the qualification of possession under it. If otherwise, and it had been their intention that a simple naked deed only had been sufficient to make the possession available under the Act, the expression would have been so formed by them as to represent that meaning, but “ deed of conveyance founded on a grant” forbids this restriction; it goes beyond a naked deed; it means something further. What is the extent of its meaning? How far does it reach? In terms it reaches to the grant; it stops short at no intermediate point; nothing less will satisfy the words of the statute, and by and by we will see that nothing less will satisfy its spirit.
A strong reason to show that the Act of 1797 meant title from the grant down to the possession of the holder or tenant appears to me from an argument used by the plaintiff in error, the reverse of the conclusion they draw seeming to me the necessary result. They say that at and before the passing of that Act a title from the grant down to the tenant, or a prima facie title, was never thought of in the arguments on the Statute of Limitations, but that, admitting the land to be 'granted generally, naked possession, possession under a verbal claim, or possession under a deed, without other right, which by some has been called color, were the opinions advanced and agitated in the courts; that the Act of 1797, supervening and professing to settle the true construction of the then present existing laws respecting seven years’ peaceable possession, must refer to some of the above constructions as being in the view of the Legislature. Now, to me it seems that if these different opinions were afloat, and agitated in the courts of Tennessee at and before the passage of the Act, and the Act itself having noticed neither naked possession, possession under a verbal claim, nor possession under a deed or color, it follows that neither of them comprise the meaning of the Legislature, or they would, for the sake of certainty and to avoid ambiguity, have expressed themselves in this language, so well known at the time to convey the particular distinct idea then intended and known by these forms of expression; their not having done so under these circumstances is strong, to my mind, that they intended neither of them, but something different; and when we have recourse to the diction of the *204 Act itself, it is so widely different from them we are confirmed in this opinion.
I think, therefore, that nothing less than title — by which is meant prima facie title or apparent title, or in other words a connected chain of title, legal or equitable, or apparently so — can satisfy the Act, considered either with reference to its words or its spirit. “ Possession by virtue of a deed founded on a grant,” in its words is most comprehensive; it is the alpha and the omega of the thing, de quo potissimo est sermo, to wit: TITLE ; the beginning, the continuation, and the end of title, with reference to individuals. The grant is the beginning, the deed of the possessor is the end; the deed is to be founded on the grant, the end is to be connected with the beginning, and, as it were, one whole to be formed; here founded and connected, according to legal ideas to be sure, by the transmission, real or apparent, of the interest of the grant, down to the deed of the possessor. But here the argument of the counsel of the plaintiff in error says that a connection between the grant and the deed of the possessor is not called for by the expression, “ by virtue of a grant,” which means simply granted land, that the right of the State, the sovereign power, should be divested, without which there could be no appropriation of land by individuals. If the extinguishment of the State’s right was all that was meant, why not use an' expression to that effect? Why-use an expression that only shows that incidentally and by consequence, and represents another idea altogether? “by virtue of a grant, by power of a grant, by efficacy of a grant,” means something' more, or rather other, than granted land; the principal idea, or, more properly speaking, the only and true idea, is the connection between the true predicated subjects, possession and grant, and implies that the former is by the power of the latter, or by the efficacy of the latter, and is nearly tantamount to the expression of possession by power of a grant, or possession by the efficacy of a grant; and it is this influence, power, or efficacy which the one predicated subject has over the other, which the grant has over the possession, that the expression “possession by virtue of a grant” means, and not the general idea of granted land, which only comes forward incidentally, or as a consequence arising from the use of the word “ grant,” and which attends it, meet it where we may and use it as we will. Possession by virtue of a grant in this statute, I understand to be a possession by virtue of a particular grant, as grant A or grant B, appropriated to the possession, and having really or apparently a power over or connection with the land possessed.
The same argument on the other member of the sentence insists that “ deed founded upon a grant” does not mean connection between the deed and the grant; that “ founded” means supported; that a deed is founded on a grant when the land is granted by the State; it is then the subject-matter of conveyance between individuals, and not before; that *205 the extinguishment of the right of the State is here meant by the Legislature by the expression “ founded,” for without this extinguishment the deed would be inoperative, but when the land is granted the deed is then founded, supported, operative. This construction of the statute destroys itself upon examination, and must be rejected from its obvious unfitness and inapplicability; for, proceeding upon the idea that the States’ title must be extinguished before any individual can'claim, before any deed can be supported or operative, does it not, and must it not, apply to both sides? Hence there could be no necessity or even use in the Legislature’s bringing forward this idea in this place, to wit: the abstract idea of granted land generally, or extinguishment of the State’s right without its connection with the defendant’s possession, and thereby forming a title, when the object of the statute is adverted to. The statute is here declaring what possession or what title shall be available against the exertion of an adverse and better one; under.what circumstances the weaker and defective title shall prevail against and bar the stronger and perfect title, by force of the Act; now, before the Act can operate, a better title, or rather a good title, must exist, which includes the State’s right for the very land the possession of which the statute protects, otherwise there is no case. The statute, therefore, cannot mean to say that the possession tó be protected must be of granted land, when the adverse and better claim to be protected against cannot exist without previously-having- and owning the State’s right to the very land in contest; as an incident, suppose a cause on trial in court, there can be no occasion for the defendant’s showing his possession to be of granted land, without reference to his interest, derived from the grant, for no other than granted land could be thus claimed by the suit of the plaintiff; and before the defendant has need of any defence or protection, the plaintiff must have first established that the very land possessed'by the defendant, the subject-matter of the suit, is granted land, and that to himself or some other under whom he claims.
The Legislature, by the words, “ deed ” and “ grant ” in this statute, mean title, and not the abstract idea of the extinguishment of the State’s rights. Lord Coke, in his first Institutes 345, B, says “ title ” signifies the means whereby a man cometh to land, as his title is by fine or by feoffment; now is not this precisely what the Legislature have here not only expressed, but what they wish to express ? They are here stating the means by which the party cometh to the possession, that is, in other words, the title to the possession, which must exist to protect it and bring it within the statute. They say this means, or this title must be by “ deed founded on a grant,” the words “deed ” and “ grant” here forming a part of the title, according to Lord Coke, mean conveyances, and necessarily imply and have reference to the interest, estate, or right, passed or purported to be passed or possessed by these conveyances, and when a deed is founded upon a grant, the interest, *206 estate, or right in the former must he derived from or connected with, the latter by right. This, in every reasonable point of view in which I can see it, must have been the meaning of the Legislature in their use of the term “ founded,” in this statute. I will only further remark, on this part of the case, that this use of the word “ founded ” by the Legislature is not a novel one by them ; it has been so used long ago; I shall produce an example of this from one of the most learned, correct, and able writers of the last century, and the preceding one; the celebrated Locke says, “ Power founded on contract can descend only to him who has right by that contract.” Here Mr. Locke, has used this term, as I say the Legislature of 1797 has used it, to wit: that “founded” means derivation from, and connection by right.
What kind of a connection did the Legislature mean ? Could it be a connection strictly legal in all its parts, a chain composed of links, all and every of them purely legal, or will equitable ones comply with the meaning ? and if equitable must they be such as in a court of equity would compel a conveyance of the legal estate to him who has this equity, or what other connection ? What title did the Legislature mean should attend the possession of seven years to render it available, and prove a bar against the good title of the claimant ? The Legislature could not have intended a regular title in all its parts, for this -would have denied the Act any operation. It must necessarily have intended to assist defective titles. Could it be meant to apply only to the case of two grants, and mean a regular legal title from the younger grantee to be the object of the statute ; this would leave out of it many cases of hardship equally deserving the interference of the Legislature in their behalf; for a junior title might be derived from the same grant, accompanied wdth possession, an older title having the better right, but lying in the background, and not capable of being observed by reasonable means, by the purchaser of this junior title. This would also deserve the protecting care of the Legislature. Suppose upon the face of the title a chasm of' a legal link, but an apparent equitable one, as a covenant or bond, with condition to convey, and accompanying the possession, would not this also be within the contemplation of the Legislature ? Suppose in the last case, a prior equity, a covenant or bond, executed before to another, to convey to him, but .unknown to the second purchaser, would not this case also fairly come within the meaning of the statute ? All these cases come, in my opinion, within the, purview of the Act of 1797 ; why ? Because both its words and its spirit admit of them, and it is reasonable and just that it should be so; that after a reasonable time given to a man to ascertain his claim, he should not afterwards be permitted to disturb the peace of society. Having slept upon his rights, either from neglect or fraud, he should from the principle of policy, be bound by his own act, in favor of the honest possessor, the fair cultivator *207 of the, soil. This character has been claimed for many to whom it does not properly belong, and much has been said in the argument of this case, upon the fair, honest possession of defendants, and what were such as coming within the views of the Legislature, that probably influenced them in fixing the pale of this policy ; and from thence they drew inferences as to the extent of the provisions of the Act, its meaning and its operation. I admit that the possession should be fair and honest, that the Legislature intended to provide for, and protect by the provisions of the Act. I cannot, however, admit these epithets as applicable to the extent contended for by the counsel, nor to the extent the arguments have gone in the reported cases in favor of defendants, who in ejectment have set up the defence of the Statute of Limitations. My mind cannot assent to the proposition that a possession is fair and honest which the purchaser upon the face of his title deeds must see that he has no right to, or where there is a chasm in the title, or a link is wanting, or where it appears that the interest or right has not passed for want of power in the alienor. In these cases, sufficient appears on the face of the title to warn the purchaser to beware. These chasms or wanting links may, and ought to be considered by him as evidences that the right has gone another way; and intermeddling under such circumstances cannot be considered a fair possession, such as the Legislature could be supposed to have had within their view, and intended by the expression of seven years’ peaceable possession of land, by virtue of a grant or deed of conveyance founded on a grant.”
Such is my view of the statute of 1797, after having given it the best examination that was in my power. Some reasons not appearing on the face of the Act, and proper perhaps to be noticed, if I had entertained any doubts upon it, might have been adduced auxiliary to this view, and confirmatory of it, — such as the state of society at the passing of the Act and the situation of our land titles at that time. Land titles existed then under very different circumstances from what they do now. At that time there were no old titles; all claims could with comparative ease be traced to their source; and the nature of almost every possession in the country be fully understood. The case is different at this day, but we are to remember that the Legislature of 1797 could not dive into futurity, anticipate what had not come to pass, or legislate upon a state of things that then had no existence. For these reasons also we are not to attribute to them views beyond their reach, or ideas they could not entertain ; much less are we to blame them for provisions which were properly applicable then, and suitable to that period, if from the lapse of time they have now perhaps become less so, influenced further by an increased and increasing population itself, producing other changes which at that day would not be thought of, or even suspected. Besides, it is not the province of a Court to remedy the unfitness of the application of the Act to the present state of things; were that *208 a correct and conceded proposition, that belongs to the Legislature. It is their peculiar province to say when the provisions of an existing statute are not suitable to the present state of society, and therefore ought to cease to be a rule for its government and direction, and not for the Courts, whose duty it is to act according to existing laws, and not to change them.
On the third point, after what has been already said, but little need be said further. The defendant’s title is not a connected chain, either legal or equitable, or apparently so ; it is not connected with the grant to Anthony Bledsoe. The deed of the 6th April, 1790, ceases to be a link for the want of power in the bargainors. This power is denied to them in the characters of executors, or by the law, and it is not given to 'them by the will of their testator. The grantee, for the land in question, is out of the range of the authority thereby created, not lying either in Kentucky or on Holsion. The deed of confirmation of the 13th December, 1797, is subject to the same objection. It cannot operate as a confirmation, because the Act to be confirmed is void. See Litt. 541; Harg. Co. Litt. note (1) to 2S5, B. 2 Term. Rep. 765, 6 ; 3 Term. 438. Neither can it operate as an original conveyance, for the alienor, Parker, had no authority by the Act of 1794, under which it professes to be made, for the want of a covenant or bond, with conditions to convey from the grantee, Anthony Bledsoe, to Bowman, concurring with the direction of the Circuit Court on this point- and the verdict of the jury. It is unnecessary to state further reasons. I am therefore of opinion that there is no error in the Circuit Court in refusing to grant a new trial, and that the judgment of the Circuit Court be affirmed.